[No. 1062.]

## JOSEPH TOGNINI ET AL., APPELLANTS, v. MATTHEW KYLE, RESPONDENT.

Sale and Delivery of Personal Property—Charcoal in Pits—Change of Possession—Sufficiency of Evidence.—R., N. & Co., being in failing circumstances, and being largely indebted to T. & Co., executed and delivered to them a bill of sale for twelve thousand bushels of charcoal in pits situate on the land of the vendors. No attempt was made to remove the coal, but within a few days after the sale, T. & Co. sent a person to the coal pits and caused the pits to be marked with their name. This person remained in charge of the pits for several days, and, upon his leaving, another person, who lived upon a neighboring ranch, was requested to look after the property. This person made occasional visits each day to the coal pits. The property was attached by other creditors as the property of R. N. & Co.: *Held*, that the evidence was sufficient to constitute a change of possession of the property.

Objections Must be Made in the Court Below.—The question as to alleged variance between the pleadings and the proofs must be made in the court below. It will not be considered for the first time on appeal.

Bill of Sale Subsequent to Attachment—Not Admissible in Evidence.—Subsequent to the levying of the attachment, and while the sheriff was holding the property under the writ, R., N. & Co. executed and delivered to the attaching creditors a bill of sale of the charcoal attached: *Held*, that this bill of sale was inadmissible in evidence. The justification of the creditors' levy being based upon the ground that the property was subject to attachment, the case, upon the facts, necessarily turned upon the question whether the property was liable to attachment.

Instructions Assuming Facts Should be Refused.—An instruction which assumes that an issuable fact is proven is in violation of the constitution, and should be refused.

APPEAL from the District Court of the Sixth Judicial District Court, Eureka County.

The facts are sufficiently stated in the opinion of the court.

*F. W. Cole,* for Appellant:

I. The bill of sale given by Ratto, Nicolo & Co. to Hansen was immaterial and irrelevant, and was properly ruled out by the court on the trial. The respondent justified as sheriff, and as such he could hold the property levied on only under some writ or other process of a court of competent jurisdiction. He could not justify under a bill of sale held by a third party. (*Rhodes* v. *Patterson*, 3 Cal. 469.) In any event the admission of the bill of sale in evidence would have been

improper. Even if Hansen, the vendee in the bill of sale, had been a party to the suit, it could not have been admitted in evidence. Ratto, Nicolo & Co. had sold and transferred the coal to appellants by bill of sale dated November 9, 1879, and any act of that firm after that date could not bind the appellants. The second bill of sale from Ratto & Co. was nothing more or less than a declaration of a vendor after sale, and it is settled law that such declarations are not binding on the vendee. A vendor cannot impeach his own acts in that way to the detriment of his vendee. (*Lewis* v. *Wilcox*, 6 Nev. 215; *Perley* v. *Foreman*, 7 Nev. 309; *Visher* v. *Webster*, 13 Cal. 58; *Worrall* v. *Parmelee*, 1 Coms. 519.) Besides, Hansen knew as soon as the attachment was levied that the appellants held a bill of sale of the charcoal from Ratto & Co., consequently Hansen was not a subsequent purchaser in good faith. (*Downs* v. *Belden*, 48 Vt. 674.)

II. The jury, under the evidence, was justified in rendering a verdict for the appellant. It was a question of fact for the jury to determine whether the sale from Ratto, Nicolo & Co. to appellants was *bona fide*, and whether there had been an immediate and continuous change of possession. If it were not a question of fact for the jury whether or not there had been such a change as the law demands, then under the evidence as a question of law the change was sufficient. (*Hall* v. *Parsons*, 15 Vt. 358; *Fitch* v. *Burk*, 38 Vt. 683; *Doake* v. *Brubaker*, 1 Nev. 218; *Gaudette* v. *Travis*, 11 Nev. 149; 3 Par. on Cont. 531.)

*R. M. Beatty,* for Respondent:

I. The court erroneously ruled out and excluded the evidence of Hansen's ownership by sale from appellants' alleged grantors, thus in effect ruling that the prior alleged sale to appellants by the common grantor was in all respects valid, and, hence, binding upon respondent. If appellants had no possession, *i. e.*, "actual and continued," such as is contemplated by the statute, at the time of the levy of the attachment, then Ratto, Nicolo & Co. had such possession, and the sheriff attached the property found in their possession as belonging to them for their debt and so held it till the sale by them to

Hansen. Hansen had a perfect right to buy, although, perhaps, Ratto, Nicolo & Co. had no right to sell the twelve thousand bushels of coal in controversy, neither respondent nor Hansen had any notice of that fact, or even intimation, except such as might be given of some indefinite claim to the contents of an undetermined number of "pits" by the "common little yellow cards," upon which was printed "Tognini & Co.—Car Tag," from which it would more reasonably have been presumed that Tognini & Co. had the contract or right to ship and deliver the coal, than that they owned or had possession of it. If this proof had been admitted, it would have shown that respondent had no interest in the subject matter of the action at the time of the notice and demand, or suit brought, and, hence, was improperly sued. (1 Comp. L. 1067.)

II. The verdict was contrary to the evidence adduced at the trial.

III. There was and is a variance between the pleadings and proofs and verdict.

IV. The court erred in refusing to give the instructions asked by respondent. (Bump on Fraud. Con. 137.)

V. Possession is a question of law, at least, the facts sufficient to constitute possession is, and the inadvertent assumption in an instruction of a fact undisputed is not error. (*Gaudette* v. *Travis*, 11 Nev. 150.)

By the Court, BELKNAP, J.:

This is a contest between the creditors of Ratto, Nicolo & Co. for a quantity of charcoal.

The plaintiffs claim ownership under a bill of sale executed November 3, 1879.

The defendant justified his taking under a writ of attachment against the debtors as their property, or subject as theirs to the writ on the first day of December, 1879.

Plaintiffs recovered judgment; a new trial was granted, and from this order plaintiffs have appealed.

In the determination of appeal each point relied upon by respondent, upon his motion for new trial, must be considered. If any one of them is good, the order of the district court should be affirmed; if, on the contrary, the record does not

disclose sufficient ground for disturbing the judgment, the order made by the court should be set aside.

The assignment of errors will be considered *seriatim:*

First—It is claimed that the evidence is insufficient to justify the verdict, because such a change of possession did not accompany the sale of the property as is contemplated by the statute of frauds.

The facts are as follows: The firm of Ratto, Nicolo & Co. were in failing circumstances. They were indebted to the plaintiffs in a considerable sum of money, and in settlement of the account transferred to them twelve thousand bushels of charcoal, the property in controversy.

At the time of the execution of the bill of sale the charcoal was in the pits in which it had been burned upon the land of the vendors. No attempt was made to remove it. A few days after the sale, and about twenty-five days prior to the time when the attachment was laid, plaintiffs sent a person to the coal pits and caused them to be severally marked with their name. This person remained in charge of the property for about a fortnight, when he left, and another, who lived upon an adjoining ranch, was requested to look after it. This latter person made occasional visits each day to the coal pits. Nothing further was done by the plaintiffs down to the time of the levy by the defendant.

In sales of personal property the statute requires that it must be taken into the actual possession of the vendee in order to be operative against the creditors of the vendor. (1 Comp. L. 292.) This requirement of the statute is based upon the principle that permitting the former owner to remain in the apparent ownership of the property may be the means of giving him a false credit. There is no difficulty in the application of the statute to sales of personal property capable of actual delivery, as, for instance, in the case of the sale of a few bushels of charcoal, but the application of the statute to sales of cumbrous property, such as twelve thousand bushels of charcoal, has been fruitful of litigation. What will amount to a change of possession sufficient to satisfy the requirements of the statute in one case, will fall short of its demands in another. Each case must be decided with the relation to the character and situation of the property at the time of the sale.

"What acts will amount to an immediate delivery and an actual and continued change of possession of personal property of a cumbrous and ponderous nature, such as a kiln of bricks," said the supreme court of California, in *Woods* v. *Bugbey*, 29 Cal. 472, "must depend in a great degree upon the circumstances of the particular case, but care should be taken in such cases to keep in view the object of the statute, and to exact nothing less than a substantial observance of its salutary provisions. In no case that we are aware of has the supreme court of this state laid down a rule requiring less than that the purchaser must have that possession which places him in the relation to the property which owners usually are to the like kind of property. In *Lay* v. *Neville*, the court, in reference to the subject say: 'It was intended that the vendee should immediately take and continuously hold the possession of the goods purchased, in the manner, and accompanied with such plain and unmistakable acts of possession, control and ownership, as a prudent *bona fide* purchaser would do, in the exercise of his rights over the property, so that all persons might have notice that he owned and had possession of the property.'"

A review of a few of the decided cases, in which the nature and bulk of the property precluded an actual delivery, will show the change of possession which courts have held to be sufficient.

In *Cartwright* v. *Phœnix*, 7 Cal. 281, the plaintiff purchased a quantity of flour standing in a separate pile in a warehouse. The vendor, pointing to the pile, said to the agent of the plaintiff, "There is the flour." The agent placed the number "800"—the estimated number of sacks—on one of them. The flour remained in this condition until attached.

The court declared that all was done which, under the circumstances, was necessary to pass the property. "It was not necessary for the vendee to remove the property from the house where it was at the time of the purchase to bring himself within the statute."

The same construction was given to the statute in the case of *Chaffin* v. *Doub*, 14 Cal. 384. In that case the debtor, to secure debts due for mowing, etc., mortgaged certain hay lying in swaths, cocks and windrows in the fields in which it

was grown. The plaintiffs continued to gather and stack the hay upon the land belonging to the debtor. Some eight days after the execution of the mortgage the hay was levied upon as the property of the debtor. The court said: "The hay was not yet in a condition for removal, but scattered over a large area—some one hundred and fifty acres—necessarily requiring time to gather it up and stack it for the purpose of preserving and getting it into a condition for use. If an actual immediate delivery were construed to mean a removal immediately from the premises, the requirement of the statute in such cases would be impossible of performance. But, if such removal be necessary at all—the vendees being in possession of the fields—the court erred in assuming, as matter of law, that a delay of eight days was too long to enable the plaintiffs to gather up and remove the hay from the fields of Buckelew. But we do not decide that this removal, under the circumstances of this case, was necessary for the vesting of title in the plaintiffs as against the creditors of Buckelew."

In Pennsylvania it was held that a large quantity of lumber left in the saw mill yard in which it was purchased, but conspicuously marked with the name of the purchaser, who was prevented by the condition of the roads from removing it without incurring unusual and unreasonable expense, was not subject to levy for the debt of the vendor. (*Haynes* v. *Hunsicker*, 26 Pa. St. 58.) In *Chase* v. *Ralston*, 30 Pa. St. 539, the property was of the same nature, the delivery made in the same manner, and the decision to the same effect.

In the case of the sale of the furniture of a large hotel, where the furniture could not be removed without great deterioration and expense, and was mainly valuable for the purposes of a hotel and at the place where it was situated, it was held sufficient for the vendee to assume the direction and control of the property in an open and notorious manner. (*McKibbin* v. *Martin*, 64 Pa. St. 352.)

In *Allen* v. *Smith*, 10 Mass. 308, it was held that a creditor taking a large number of bricks for his debt, and placing an agent in charge of them, was a sufficient change of possession, notwithstanding the property remained in the kiln and brickyard of the debtor. "This yard," said the court, "is not

like a dwelling-house, which the plaintiff might have constantly occupied, by himself or an agent; or like a warehouse, of which he might have kept the key. It could not be necessary that he should keep an agent constantly in the yard to watch his property and keep possession of it. The conveyance to the plaintiff appears to have been made *bona fide*, and for a valuable consideration. Possession was delivered to him at the time, in the presence of sundry witnesses. It is not always necessary that there should be an actual removal of the goods, and a change of the possession from hand to hand. Here, from the nature of the article, it could not be removed without considerable expense and loss; and it is not usual to remove bricks before they are sold, nor to put them into a warehouse for sale, on account of the expense and the damage they sustain by removal. The plaintiff, therefore, instead of removing them, kept them for sale in the same yard, with the consent of the owner of the land." (See, also, *Long* v. *Knapp*, 54 Pa. St. 514; *Benford* v. *Schell*, 55 Pa. St. 393; *Hutchins* v. *Gilchrist*, 23 Vt. 82; *Fitch* v. *Burk*, 38 Vt. 683; *Robbins* v. *Oldhem*, 1 Duvall, Ky. 28; *Cummins* v. *Griggs*, 2 Ib. 87; *Morton* v. *Ragan*, 5 Bush, 334.)

More was done by way of investiture in this case than in the cases of *Cartwright* v. *Phœnix*, *Haynes* v. *Hunsicker*, or *Chase* v. *Ralston*. The facts closely resemble those in *Allen* v. *Smith*. In that case, as in this, the property remained upon the premises of the debtor, and in each case the person in charge for the purchaser was absent at the time of the levy.

The creditors of the vendors could not have been misled by the failure of the plaintiffs to remove the charcoal before selling it, and it was not necessary to subject them to that expense.

One of the conditions of the sale by Ratto, Nicolo & Co. to the plaintiffs was that the vendors were to sack and load the charcoal upon wagons. Presumably this embraced the obligation of drawing the coal out of the pits. They did so draw it. But this act showed no possession in the vendors as against plaintiffs, in face of the notices posted upon the pits and the presence of the persons sent there by them.

Second—The next assignment of error relates to an alleged variance between the pleadings and proof. Questions of this nature should be made at the trial, when the objection, if well taken, may be removed by amendment. The point having been omitted there, it cannot be raised for the first time on motion for new trial.

Third—During the trial the court excluded proof that subsequently to the levying of the attachment, and while the sheriff was holding the property under the writ, the defendants in attachment, Ratto, Nicolo & Co., sold it to P. H. Hansen, to whom it was delivered, before demand. The district court being of opinion that its ruling upon this point might have been erroneous, granted defendants' motion for a new trial. We see no reason why this testimony should have been admitted. The justification of the defendants' levy is based upon the ground that the property was subject to attachment as that of Ratto, Nicolo & Co. If it was theirs the defendant was justified, and a bill of sale executed subsequently by the debtors could not strengthen defendants' position as against the plaintiffs.

If, however, the plaintiffs were the owners of the property the defense failed, and it could not have been aided by any attempted transfer by those who were not the owners. The case turned upon the question of the liability of the property to attachment, and it was immaterial, under the circumstances, whether the transfer was made by the debtors to Mr. Hansen.

Fourth—The court refused to give the following instruction: "You are instructed that the mere placing of tickets or notices, such as have been proven in this case, upon coal pits, is not sufficient evidence to make a valid possession in the plaintiffs as against defendants in this case, and if you find that said notices were the only evidence of a change of possession of the coal, you must find a verdict for defendant."

The evidence was uncontradicted that notices were posted at the coal pits and men placed in charge of them, as hereinbefore stated.

The instruction assumes the fact of the posting of the notices, but is silent as to the charge taken by the men. In this it is misleading.

But the principal objection to it is that it assumes an issuable fact, was proven, and therein violates the provision of the constitution prohibiting judges from charging juries with respect to matters of fact.

It is said that the instruction should have been allowed because the fact that the notices were posted was uncontradicted. In *Gaudette* v. *Travis*, 11 Nev. 149, this court refused to reverse a case in which the lower court had, in its instructions, assumed as a fact a matter upon which the evidence was uncontradicted. The opinion was based upon the ground that the ruling, although erroneous, could not have been prejudicial, and that if the fact assumed had been submitted to the jury on a special issue, and they had found otherwise, no court would have hesitated to set aside the verdict.

It is well settled that a judgment should not be reversed because of the allowance of an incorrect instruction, when it is clear that the error could not have injured the complaining party, and the verdict is undoubtedly right. But that principle is inapplicable to a case like this one, in which the court refused to give an erroneous instruction.

This completes the exceptions relied upon in the motion for new trial. None of them being well founded, the order granting a new trial should be reversed, and it is so ordered.